UNITED STATES OF AMERICA,

        Plaintiff,

v.

JUSTIN HANSON and
MOHAMMED KAZIM ALI,

        Defendants.

Case No. 24-CR-008
[18 U.S.C. §§ 371, 1347, & 2(a);
42 U.S.C. § 1320a-7b(b)]

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

1. At all times material to this indictment:

    a.    Defendant Justin Hanson ("Hanson") resided in Wisconsin and was an owner and operator of Noah Associates, Inc. ("Noah"), a clinical laboratory with locations in Milwaukee, Wisconsin, and West Allis, Wisconsin. Hanson was not a licensed medical professional.

    b.    Defendant Mohammed Kazim Ali ("Ali") resided in Wisconsin and was an owner and operator of Noah. Ali was not a licensed medical professional.

    c.    Noah performed urine drug testing. There are two general types of urine drug testing: presumptive testing and definitive testing. Presumptive drug tests detect the presence or absence of a drug or drug class; they do not typically indicate a specific level of a

1

drug but rather give a positive or negative result. Definitive drug tests detect specific drugs, specific drug concentrations, and associated metabolites.

  d. GRO Family Services LLC ("GRO") was an alcohol and other drug abuse treatment provider located in Milwaukee, Wisconsin. GRO was owned and operated by G.O., who was not a licensed medical professional.

  e. Jesse Crawford Recovery Center ("JCRC") was an alcohol and other drug abuse provider with locations in Madison, Wisconsin, and Janesville, Wisconsin. JCRC was owned and operated by J.C., who was not a licensed medical professional.

The Medicare and Wisconsin Medicaid Programs

  f. The Medicare Program ("Medicare") was a federally subsidized health insurance program for persons who are age 65 or older or for persons who are disabled.

  g. Medicaid was a program jointly funded by the federal government and participating states to provide health insurance to indigent families with dependent children and to aged, blind, and disabled individuals whose income and resources are insufficient to meet the cost of medical services. Wisconsin participated in the Medicaid program ("Wisconsin Medicaid").

  h. To participate in the Medicare and Wisconsin Medicaid programs, a provider must enter into written provider agreements with the United States Department of Health and Human Services and the Wisconsin Department of Health Services, respectively. In these agreements, the provider certifies that every claim for payment submitted to Medicare and Wisconsin Medicaid is truthful and that the services billed have been furnished in accordance with federal law, including a prohibition on offering, paying, soliciting, and receiving anything

of value in exchange for the referral, order, and arranging the order of services and items paid for by Medicare and Wisconsin Medicaid (otherwise known as illegal kickbacks).

      i.      Noah was a participating provider in the Medicare and Wisconsin Medicaid programs. As a participating provider in Medicare and Wisconsin Medicaid, Noah agreed to abide by the laws, rules, regulations, policies, and procedures that governed reimbursement by Medicare and Wisconsin Medicaid, including the prohibition on illegal kickbacks.

      j.      Hanson and Ali, in their role as the owners of Noah, executed and provided to Medicare and Wisconsin Medicaid certifications acknowledging and agreeing to abide by federal law, including the prohibition on illegal kickbacks.

      k.      GRO was a participating provider in Medicare and Wisconsin Medicaid, and many of GRO's clients were Medicare and Wisconsin Medicaid beneficiaries. As a participating provider in Medicare and Wisconsin Medicaid, GRO agreed to abide by the laws, rules, regulations, policies, and procedures that governed reimbursement by Medicare and Wisconsin Medicaid, including the prohibition on illegal kickbacks.

      l.      Noah performed urine drug tests on urine samples obtained from GRO's and JCRC's clients, including individuals with Medicare and Wisconsin Medicaid coverage.

## COUNT ONE
(Conspiracy)

**THE GRAND JURY FURTHER CHARGES THAT:**

2.      The allegations in paragraph 1 of this Indictment are realleged and incorporated by reference.

3. From approximately October 2017 through approximately October 2020, in the State and Eastern District of Wisconsin and elsewhere,

**JUSTIN HANSON and MOHAMMED KAZIM ALI**

knowingly conspired and agreed with each other, and with others known and unknown to the Grand Jury to commit offenses against the United States, namely, to knowingly and willfully solicit, receive, offer, and pay remuneration, specifically kickbacks to G.O., in return for referring, ordering, and arranging for the order of any item and service from Noah, specifically urine drug testing for GRO's and JCRC's clients, for which payment may be made, in whole and in part, by Medicare and Wisconsin Medicaid, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A), 1320a-7b(b)(1)(B), 1320a-7b(b)(2)(A), and 1320a-7b(b)(2)(B).

<u>Manner and Means of the Conspiracy</u>

4. The manner and means used to accomplish the objects and purposes of the conspiracy included, among other things:

    a. Starting in approximately October 2017, Hanson and Ali agreed to pay money to G.O. through an intermediary in exchange for G.O. referring GRO's clients to, and ordering and arranging for the order of urine drug tests for GRO's clients from, Noah.

    b. Although G.O. is not a medical professional, G.O. referred all of GRO's clients to, and ordered and arranged for the order of urine drug tests for all of GRO's clients from, Noah. Although Hanson and Ali are not medical professionals, Hanson and Ali directed G.O. to select specific types of tests and to order those tests at specified frequencies. Specifically, Hanson and Ali directed G.O. to order expensive, definitive tests for GRO's clients multiple times per week, regardless of the lack of any medical need for the type and frequency of testing ordered.

c. After Hanson asked G.O. to find other clinics to send urine samples to Noah, G.O. convinced J.C. to refer JCRC's clients to Noah for urine drug testing. In exchange for G.O. arranging for JCRC to order urine drug tests from Noah, Hanson and Ali agreed to pay G.O. through an intermediary for each urine sample sent from JCRC to Noah.

d. In order to conceal the kickback payments to G.O., Hanson, Ali, and G.O. agreed that the payments would be made to G.O.'s wife, J.O., from approximately October 2017 through February 2019.

e. In order to further conceal the kickback payments to G.O., Hanson, Ali, and G.O. agreed that the payments would be made to another individual, J.J., from approximately January 2019 through September 2020.

f. After receipt of the kickback payments, both J.O. and J.J. provided most of the money to G.O.

g. Hanson and Ali, as the owners and operators of Noah, submitted and caused others to submit claims for reimbursement to Medicare and Wisconsin Medicaid for urine drug tests procured through the kickback payments made to G.O.

h. Between approximately October 2017 through September 2020, Hanson and Ali paid G.O. substantial remuneration in exchange for G.O. referring GRO's clients to Noah and for ordering and arranging for the ordering of urine drug tests from Noah for GRO's and JCRC's clients.

Acts in Furtherance of the Conspiracy

5. In furtherance of the conspiracy and to accomplish the objects and purposes of the conspiracy, the following acts, among others, were committed and caused to be committed:

      a.      On or about January 10, 2018, G.O. directed J.O. to meet Ali at Noah's offices. Ali caused J.O. to sign agreements falsely stating that J.O. would act as a marketer for Noah and that J.O. would comply with federal laws prohibiting kickbacks to referral sources.

      b.      On or about December 27, 2018, G.O. directed J.J. to meet with Hanson at Noah's offices. Hanson caused J.J. to sign an agreement falsely stating that J.J would act as a sales representative of Noah and that she would comply with federal laws prohibiting kickbacks to referral sources.

      c.      On or about January 26, 2018, Hanson, through Noah, offered and paid kickbacks to G.O. through payments to J.O.

      d.      On or about January 10, 2019, Ali, through Noah, offered and paid kickbacks to G.O. through a payment to J.O.

      e.      On or about the dates listed in Counts Two through Four of this Indictment, Hanson, through Noah, offered and paid kickbacks to G.O. through payments to J.J.

      f.      On or about the dates listed in Counts Five through Six of this Indictment, Ali, through Noah, offered and paid kickbacks to G.O. through payments to J.J.

All in violation of Title 18, United States Code, Section 371.

# COUNTS TWO THROUGH FOUR
(Offering and Paying Kickbacks)

**THE GRAND JURY FURTHER CHARGES THAT:**

6. Paragraphs 1 through 5 of this Indictment are realleged and incorporated by reference.

7. On or about the dates set forth below, in the State and Eastern District of Wisconsin,

## JUSTIN HANSON

knowingly and willfully offered to pay, paid, and caused to be paid remuneration, including any kickback, directly and indirectly, to G.O. in the form of payment, as set forth below, to induce G.O. to refer an individual to Noah for the furnishing and arranging for the furnishing of any item and service, namely, urine drug testing, and to induce G.O. to order and arrange for the order of any item and service, namely, urine drug testing, for which payment may be made in whole and in part under federal health care programs, including Medicare and Wisconsin Medicaid:

| Count | Date | Named Recipient | Approximate Amount |
|---|---|---|---|
| 2 | February 22, 2019 | J.J. | $2,709.16 |
| 3 | March 1, 2019 | J.J. | $2,709.16 |
| 4 | June 14, 2019 | J.J. | $2,709.16 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

7

Case 2:24-cr-00008-JPS-WED   Filed 01/17/24   Page 7 of 13   Document 1

## COUNTS FIVE THROUGH SIX
(Offering and Paying Kickbacks)

**THE GRAND JURY FURTHER CHARGES THAT:**

8. Paragraphs 1 through 5 of this Indictment are realleged and incorporated by reference.

9. On or about the dates set forth below, in the State and Eastern District of Wisconsin,

**MOHAMMED KAZIM ALI**

knowingly and willfully offered to pay, paid, and caused to be paid remuneration, including any kickback, directly and indirectly, to G.O. in the form of payment, as set forth below, to induce G.O. to refer an individual to Noah for the furnishing and arranging for the furnishing of any item and service, namely, urine drug testing, and to induce G.O. to order and arrange for the order of any item and service, namely, urine drug testing, for which payment may be made in whole and in part under federal health care programs, including Medicare and Wisconsin Medicaid:

| Count | Date | Named Recipient | Approximate Amount |
|---|---|---|---|
| 5 | January 22, 2019 | J.J. | $2,709.16 |
| 6 | January 22, 2019 | J.J. | $2,709.16 |

Each in violation of Title 42, United States Code, Section 1320a-7(b)(b)(2).

## COUNTS SEVEN THROUGH NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

10. Paragraphs 1 through 5 of this Indictment are realleged and incorporated by reference.

11. From approximately October 2018 through approximately October 2020, in the State and Eastern District of Wisconsin,

## JUSTIN HANSON

knowingly and willfully executed and attempted to execute a scheme to defraud a health care benefit program, namely Wisconsin Medicaid, and to obtain, by means of materially false and fraudulent premises, representations, and promises, money and property owned by, and under the custody and control of, such program, in connection with the delivery of and payment for health care benefits, items, and services.

### Wisconsin Medicaid Rules Regarding Presumptive Urine Drug Tests

12. In Noah's provider agreement with Wisconsin Medicaid, Noah agreed to comply with the rules and regulations set forth in the ForwardHealth Online Handbook and periodic updates (the "Handbook").

13. Wisconsin Medicaid established rules and regulations for coverage and reimbursement for urine drug tests in the Handbook.

14. Per the rules and regulations established in the Handbook, Wisconsin Medicaid only covered and reimbursed medically necessary drug tests ordered by a physician or other appropriate licensed medical provider. Any drug test performed without a specific order is not covered.

9

Case 2:24-cr-00008-JPS-WED   Filed 01/17/24   Page 9 of 13   Document 1

15. Per the rules and regulations established in the Handbook, Wisconsin Medicaid did not cover more than one presumptive drug test performed for a patient on a single day of service, regardless of the number of providers performing the tests. In other words, Wisconsin Medicaid would not pay for more than one presumptive urine drug test performed on a single urine sample.

## The Scheme

16. The scheme operated as follows:

    a. GRO collected urine samples from its clients for urine drug testing. Beginning no later than October 2018, staff at GRO collected the urine samples in test cups that provided presumptive test results.

    b. GRO submitted claims for reimbursement to, and received reimbursement from, Wisconsin Medicaid for the presumptive tests performed with the test cups.

    c. In the majority of tests, the test cups administered to GRO's clients did not detect the presence of unexpected drugs or other substances.

    d. At the direction of Hanson, however, G.O. caused GRO to send all the urine samples collected from GRO's clients to Noah for additional urine drug testing. Hanson also told G.O. what urine drug tests GRO had to order on the samples sent to Noah.

    e. When the staff at GRO sent the urine samples to Noah, the urine samples remained in the test cups. Hanson and others at Noah thus saw that GRO had already performed a presumptive urine drug test on each sample.

    f. At the direction of Hanson, Noah purported to perform another presumptive test on each urine sample received from GRO and submitted claims for reimbursement to Wisconsin Medicaid for those presumptive tests.

10

g. By submitting and causing Noah to submit a claim for reimbursement to Wisconsin Medicaid for additional presumptive testing after GRO performed and billed for a presumptive test, Hanson made materially false and fraudulent pretenses, representations, and promises related to a material fact, namely, that the GRO client at issue had a legitimate medical need for the presumptive urine drug test performed by Noah and that such test was eligible for coverage.

17. From October 1, 2018, through October 31, 2020, at the direction of Hanson, Noah submitted over 7,000 claims to Wisconsin Medicaid for unnecessary presumptive urine drug tests performed on samples from GRO's clients, and Wisconsin Medicaid paid Noah approximately $448,304.38 for those claims.

Execution of the Scheme

18. On or about the dates set forth below, Hanson, for the purpose of executing the scheme described above, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following false and fraudulent claims in the table below, which falsely represented that the presumptive urine drug tests were eligible for coverage by insurance and were medically necessary:

| Count | Date of Service | Date of Claim/Bill | Patient | Health Care Benefit Program | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|
| 7 | June 2, 2020 | June 22, 2020 | D.P. | Wisconsin Medicaid | $93.21 | $62.14 |
| 8 | January 8, 2020 | January 23, 2020 | R.D. | Wisconsin Medicaid | $240.77 | $63.40 |
| 9 | March 23, 2019 | May 1, 2019 | S.T. | Wisconsin Medicaid | $215 | $63.40 |

11

Each in violation of Title 18, United States Code, Sections 1347 and 2(a).

12

# FORFEITURE NOTICE

1. Upon conviction of any of the offenses in the indictment, the defendants, Justin Hanson and Mohammed Ali, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from the proceeds traceable to the offense. The property to be forfeited includes, but is not limited to:

    a. a money judgment for a sum of money equal to the amount of proceeds obtained as a result of the conspiracy alleged herein.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL:

FOREPERSON
Dated: 1-17-2024

GREGORY J. HAANSTAD
United States Attorney