UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,                    Case No. 24-CR-008

                Plaintiff,                   Judge J P Stadtmueller

        v.

MOHAMMAD KAZIM ALI,

                Defendant.

## DEFENDANT MOHAMMAD KAZIM ALI'S SENTENCING MEMORANDUM

Defendant Mohammad Kazim Ali submits this sentencing memorandum for consideration by this Honorable Court to determine a sentence that is "sufficient but not greater than necessary" to serve the purposes of federal sentencing. This memorandum, together with the letters from multiple individuals attached as **Exhibit A**, provides a more complete picture of Mr. Ali's personal life and character – one that is dedicated to his family, his community and his desire to help others. As these letters submitted to the Court reflect, Mr. Ali's actions and charitable efforts have benefited and continue to benefit countless people in rural villages in India and other countries. The question before this Honorable Court is whether to sentence Mr. Ali to a term of imprisonment in a federal facility, or to impose a punishment that permits him to remain at home where he can continue to assist others and to care for his wife. For the reasons discussed below, we respectfully submit that a noncustodial sentence more than satisfies the purposes of the Sentencing Guidelines and is appropriate in this case.

Sentencing is the appropriate time, we submit, to weigh the good with the bad. All the good that Mr. Ali has done must be weighed against the conduct that gave rise to the conviction in this case. It is appropriate – indeed, mandatory – for the Court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The fundamental truth about Mr. Ali is that he is an extraordinarily good and decent man who cares deeply for his family, his community, and for those less fortunate than most. Mr. Ali stands before this Honorable Court with shame, after having pleaded guilty and fully accepting responsibility for his conduct.

## MR. ALI'S HISTORY AND CHARACTERISTICS

### A. Mr. Ali's Life

Mr. Ali was born on September 18, 1951, in Hyderabad, India. He grew up with four siblings: Akber, Shameem, Razia, and Ahmed. His parents, Mr. Mohammed Mahboob Ali and Munwar Begum, moved their family from India to the United States in 1974. Mr. Ali is thankful to have had a good and loving childhood. His parents instilled their children with strong values of religion, education, and work ethic—values that Mr. Ali still carries to this day. Mr. Ali's father unfortunately became chronically ill shortly after moving to the United States. He eventually passed away from a heart attack in 1987. Mr. Ali's mother passed away from a heart attack as well in 2004. Mr. Ali's brother, Ahmed, with whom he was extremely close, passed away in 2010. Mr. Ali remains close with his remaining siblings, Akber, Shameem, and Razia.

Mr. Ali married Naseem Ali in 1984. Mrs. Ali is not fluent in English and primarily speaks Urdu. The couple have three sons together: Ammar, Abrar, and Aasir. Ammar is an emergency medical physician in Wisconsin, and Aasir works in finance in California. Abrar unfortunately suffers from mental health issues and has never been able to maintain stable employment. Consequently, Mr. Ali, Ammar, and Aasir support him financially.

34392742.4

In the early 2000s, while driving two of their children in her car, Mrs. Ali was struck by a drunk driver, resulting in significant injuries to her spine. She has since undergone multiple surgeries for chronic pain management. Unfortunately, Mrs. Ali continues to suffer from severe chronic pain and related issues to this day.

As Mrs. Ali states in her letter to this Court:

> My husband's presence in my life is essential to my ability to function and maintain a stable household. On days when I have severe pain, he helps with my mobility around the home. It is difficult to even go to the bathroom without help on those days. I also do not speak/understand English very well and he is responsible for most of our out-of-home management.

(Naseem Ali Character Letter) (Written using an Urdu translator).

Mr. Ali also relies on his wife to care for him. Mrs. Ali addresses her husband's health issues in her letter:

> My husband's health has become quite fragile as well. We are at the hospital multiple times a year as his body is slowly failing him with time. I am with him at each ER visit, which turns into hospital admission. He relies on a machine to regulate his breathing while he is sleeping. Due to his uncontrolled GI issues and diabetes, I have to closely monitor what he eats on a daily basis.

*Id*.

Dr. Sara Hasan, DO, who provides care for both Mr. and Mrs. Ali, discusses both of their health situations in her Letter to this Court. Dr. Hasan writes:

> Mrs. Ali "has medical problems that limit her activities of daily living. It is Mr. Ali who provides her with the care that allows her to function, as they both live alone. She has multiple traumatic spinal injuries that give her pain and limit her mobility from a car accident in the early 2000s. She has had multiple surgical interventions with limited success. The medications however do not fully suppress her condition and often there are days she cannot get out of bed unassisted. Additionally she is not fluent in English so he handles her day to day affairs as well. <u>It is certain that she will suffer a great deal, both in health and otherwise, if he were not present to care for her</u>.

34392742.4

(Dr. Sara Hasan, DO, Character Letter) (Emphasis added).

Similarly, Dr. Hasan considers Mr. Ali's health to be "poor." Dr. Hasan confirms that she has personally witnessed his care in the hospital. She writes:

> Quite often [Mr. Ali] has Emergency Room admissions, regarding everything but not limited to uncontrolled blood pressure, diabetes, respiratory depression from acute lung infections, acute diverticulitis attacks, and other GI emergencies. His medical conditions place him at high risk for communicable diseases (especially ones present in prison populations). Just in September he became ill with COVID and had to be rushed to the ER for fluid resuscitation due to altered mental status and fluid shock. Lastly, I have knowledge of him having moments of cognitive delay, such as calling people incorrect names and occasionally forgetting his location, and slowed mental processing. This is consistent with the beginning of vascular dementia secondary to microinfarcts from his uncontrolled diabetes and hypertension. I believe he will have a significant deterioration of his health if he is incarcerated.

*Id.* (Emphasis added).

Dr. Hasan recently supplemented her letter on January 9, 2025, pointing out that "[i]n addition to [Mr. Ali's] chronic issues he has been suffering from pre-syncopal episodes (passing out/near passing out). This required a recent ER visit which has led him to need further testing." (Dr. Sara Hasan, DO, Supplemental Character Letter).

In light of Mr. Ali's medical condition, he is currently prescribed the following medications: Alendronate; Amlodipine; Epinephrine; Fluticasone Propionate; Losartan; Metformin XR; Omeprazole; Rosuvastatin; Tamsulosin; Aspirin; Cyclobenzaprine; Meloxicam; Menactra (PF); Oxycodone-acetaminophen; Tretinoin, and; Ergocalciferol (Vit D).

In Mrs. Ali's letter to this Court, her final plea on behalf of her husband provides us with the most apt summary of Mr. Ali's character and importance to his family:

> Your honor, my husband is a devoted man, and a person of such integrity and kindness. He has helped my siblings in their careers and families by housing them and providing them with jobs when they came to America.

4

My children have looked up to him as a good role model and father. We also have three grandchildren who are obsessed with their grandpa, who gives them love and adoration. Given all these factors, I implore you not to give him a prison sentence. Please, I need him in my life and so does his family.

(Naseem Ali Character Letter).

## B. Noah Clinical Laboratory

Mr. Ali and Justin Hanson formed Noah Clinical Laboratory ("Noah") in 2017. Prior to that time, Mr. Ali worked as a respiratory therapist in the 1980s and opened a respiratory care services company in Appleton, Wisconsin, where he provided services to local hospitals. Mr. Ali then opened SAQH Behavioral Center in Milwaukee in 2013. He subsequently closed SAQH in 2017 and formed Noah with Mr. Hanson. Mr. Ali was 51% owner of Noah, and Mr. Hanson owned the remaining 49%. Noah was mostly involved in performing urinalysis testing. Mr. Ali pleaded guilty to Count Five of the Indictment, the terms of which are described in Mr. Ali's plea agreement with the Government. The Government has agreed to dismiss the remaining charges against Mr. Ali.

Mr. Ali's actions in this matter are inconsistent with his years in business and are not representative of his normal business dealings. With that said, Mr. Ali takes full responsibility for his actions and acknowledges his guilt. He now must live with his shame for the rest of his life. It is important to note that Mr. Ali fully paid his restitution obligation several months ago on October 29, 2024, ensuring that the government has been made whole.

## C. Charitable Works

### i. KNA Foundation

We all know that actions speak louder than words, and Mr. Ali's actions over the years providing assistance to people in need speak volumes to his exemplary character and generosity.

34392742.4

His parents instilled in him the belief that you help others less fortunate than yourself and not to publicize your actions. For more than 30 years, Mr. Ali has donated money to various charities and relief funds operating in poorer countries, including Somalia, Bosnia, Sudan, Ethiopia, Venezuela and India, among others. Regarding his efforts in India, Mr. Ali had to deal with challenging inefficiencies within the government's bureaucracy. He became more and more frustrated in ensuring his donations were used for the people he wanted to help and was unable to donate directly to smaller groups without going through the central government's maze of regulations.

Mr. Ali founded his own charity, the KNA Foundation, in 2021. Since then, KNA has positively impacted thousands of people. Mr. Ali was particularly focused on assisting vulnerable members of the population such as young girls and mothers in smaller villages who were either abandoned or lost their husbands and family members, leaving no one to protect them. Mr. Ali, through his charity, continues to pioneer sustainable and important projects that raise the standard of living of people in poor communities and empower those individuals. KNA aims to create long-term changes and foster meaningful improvements for a better future.

For instance, in India, Mr. Ali established an after-school program for poor children to feed them and pay for qualified teachers to assist them in their studies to make up for the poor quality of government teachers and lack of food they normally receive. At present, the after-school program services 150 students and there are more than 100 students on the waiting list to enroll. This will require additional space to care for the children and can only be accomplished by Mr. Ali, who is familiar with all the government regulations and requirements that need to be addressed.

6

Another program Mr. Ali put into place several years ago delivers food to the homes of nearly 300 elderly women, widows with children, handicapped individuals and people who are bedridden with illnesses, all of whom are unskilled and without incomes. Mr. Ali, through KNA, also opened a clinic for the very poor to provide them with basic health care services. The clinic is open two days a week and fully staffed with doctors and nurses. The number of patients serviced by the clinic has grown fourfold since opening and the medical staff is pleading with Mr. Ali to come to India to expand the operation. Finally, Mr. Ali established a skills development program to help people learn a trade.

In addition, KNA seeks to achieve the following objectives[1]:

- <u>Empowering Livelihoods</u> – Organize skill set training programs to empower individuals for income-generating activities, fostering economic independence and self-sufficiency.

- <u>Universal Education</u> – Advocate for and work towards making education a fundamental right for every child, irrespective of socio-economic background, gender, or geographic location.

- <u>Dignified Living for the Destitute</u> – Elevate pensions, donations, and healthcare facilities in rural areas, ensuring those in need have the means to meet their basic life needs and can live with dignity.

- <u>Sustainable Community Development</u> – Establish sustainable units through small business plans, promoting community development and economic growth in rural areas.

- <u>Collaborative Partnerships</u> – Collaborate with various NGOs to synergize efforts and achieve KNA's vision and mission for community betterment.

---

[1] https://knafoundation.org/about-us/



34392742.4





34392742.4





34392742.4





34392742.4

KNA has benefitted thousands of individuals in pursuit of these goals. For example, since 2023 alone, KNA has completed many incredibly helpful programs, including[2]:

- <u>Turkey Earthquake Donation</u> – The KNA team volunteered for the Turkey donation initiative, securing essential items such as medicine, infant care needs, tents, sleeping bags, and daily essentials for earthquake victims in rural villages and towns devastated by the earthquakes in Turkey.

- <u>Ramadan Grocery Kits and Sari Distribution</u> – In partnership with Assist NGO and SEEDS USA, the KNA Foundation expanded its assistance to 600 individuals in 2023 and 500 individuals in 2024 within India's Guntur and Khammam districts. This support included providing Ramadan grocery kits and distributing saris. This has paved the way for KNA to increase its grocery distribution efforts. Indeed, KNA has selected 114 destitute individuals to whom it will provide monthly grocery kit distributions in 2024-2025.

- <u>Student Donation Initiative</u> – KNA provided breakfast to 10th-grade students in government-funded schools in India, ensuring the students were able to focus on their studies without hunger. KNA also supplied school books and book bags to fifty students in 2023, and 118 students in 2024.

- <u>Assist Care Home for Compassion, Comfort, and Care</u> – KNA established a home designed to provide compassion, comfort, and care for twenty elderly beneficiaries, aiming to create a haven for a better old age that would not otherwise have been enjoyed.

- <u>Empowering Communities through Sustainable Energy and Skill Development</u> – KNA, in collaboration with SEEDS USA, is proud to have initiated two more impactful projects. First, the dual desk school benches manufacturing unit at Dornakal not only improved educational infrastructure but also created employment opportunities for local communities. Additionally, the catering unit at Khammam empowers between ten and fifteen families by developing skills and supporting small business units.

- <u>Supporting Women</u> – In 2023, KNA provided groceries to 758 single women in need, along with monthly support for 287 women, ensuring their basic survival needs were met.

---

[2] https://knafoundation.org/kna-report/

34392742.4





34392742.4

### ii. Mr. Ali's Importance to KNA

Mr. Ali is essential to KNA's continued operations. Since founding KNA, he "has demonstrated an extraordinary commitment to philanthropy since establishing the foundation." (Asma Nikaht Character Letter). Indeed, Asma Nikhat notes:

> [Mr. Ali] has successfully launched and managed numerous impactful programs, including disaster relief efforts for flood victims in India and earthquake survivors in Turkey. Currently, he oversees crucial monthly grocery distributions for over 287 widowed women with children, an after-school support program benefitting 150 student beneficiaries, and ASSIST Care, which provides shelter, food, and medical care to 20 elderly women who have been abandoned and are now homeless. Additionally, he initiated a revolving credit program to empower 14 widows to establish small businesses and led the construction of borewells to ensure clean water access for 500 families. Although he is not in India ... Mr. Ali remains deeply committed, actively managing these projects and planning future initiatives.

*Id*.



Mr. Ali's importance to KNA cannot be overstated. He is not only the founder and president of the organization, he is truly the life blood of its operations. His ability to continue his

personal involvement in working with KNA directly correlates with the charity's ability to achieve its philanthropic goals.

> Under Mr. Ali's leadership, [KNA's] proposals gain strength and new opportunities emerge, securing project sustainability and alignment with the KNA Foundation's mission to empower communities through education and livelihood initiatives. His role in document signing and team mentorship is crucial, as we are a pilot team. His guidance drives [KNA] forward, laying the foundation necessary for meaningful, lasting impact." *Id*. Mr. Ali's dedication to KNA has brought "hope and healing to countless lives.

(Syed Q. Hussaini Character Letter).

Mr. Ali has launched *and managed* numerous impactful programs through KNA. He currently oversees monthly grocery distributions to nearly three-hundred (300) widowed mothers, an after school program benefiting one-hundred fifty (150) students, and KNA's ASSIST Care, which provides shelter, food, and medical care to twenty elderly unhoused women. *Id*. Any sentence requiring incarceration would pull Mr. Ali away from his work at KNA and devastate KNA's philanthropic efforts.

### iii. Mr. Ali is a Generous and Kind Man.

The attached letters are replete with stories of Mr. Ali's kindness and high character, which stretch beyond his work with the KNA Foundation and his dedication to his family. For example, Mr. Ali once canceled a critical company meeting so that he could personally transport a senior employee to the hospital when that employee was believed to have suffered a stroke. Mr. Ali paid for the employee's medical expenses and offered financial support until he made a full recovery. (Flor M. Quijada Garcia Character Letter). Mr. Ali also brought many job opportunities to Venezuela, where he generously shared his business experience and knowledge, and encouraged others to create their own small businesses to achieve independence. (Jesus Daniel Quijada Character Letter). He offered financial and personal support to many community members during

15

the height of the COVID pandemic, and organized relief efforts to aid those affected by devastating floods in Pakistan in 2022. (Adnan Talat Character Letter). He has done humanitarian work in other countries, such as Somalia (where he provided laptops to medical students), Ethiopia, and Sudan. (Mr. Ali Ibrahim Khaleet Character Letter; Syed Q. Hussaini Character Letter). When a close friend suffered a heart attack, Mr. Ali immediately traveled from Milwaukee to Texas to be by his friend's side—"[h]is presence and support during such a vulnerable time was invaluable, and this act of kindness left an indelible impression" on his friend. (Mr. Ali Mazharuddin Character Letter).

The letters in support show that those who know Mr. Ali hold him in the highest regard. (All emphases added).

- "Mr. Ali's dedication as a philanthropist and his tireless efforts in social initiatives are commendable. **It is leaders like him who pave the way for positive change and uplift those in need**." (Bhavani Allu Character Letter).

- "Mr. Ali is **an inspiring person that leads with kindness and empathy** and does everything with a smile, for family members as well as friends when help is needed." (Mr. Ali Azeemul Haq Character Letter).

- "I feel personally proud to have acquaintance with this great man Mr. Ali as he is very humble and feels concern to the fellow human beings, which is the best quality I found in him. **His preparedness to share his resources for the betterment of people in the society is highly commendable and should be appreciated by all**." (J. Ranga Rao Character Letter).

- "During the time I have known Mr. Ali, he has exhibited qualities of integrity, compassion and a strong sense of responsibility. **He is known for his dedication to his wife, children, and for being there for friends and family in time of need**." (Flor M. Quijada Garcia Character Letter).

- "**[H]e exemplifies humility and generosity.** His passion for social services is evident in his commitment to promoting education for [children], empowering widows through skill-based training, and supporting various community upliftment projects." (Mr. Ali M. Khan Character Letter).

16

- Mr. Ali's "connection to the people in need, coupled with his dedication, set him apart as **a leader and a humanitarian**. I can say without hesitation that Mr. Ali is not only a dear friend but also **a pillar of our society**. He embodies the values of integrity, compassion, and resilience. His contributions during difficult times, both locally and internationally, have made a lasting impact, and I believe he is a remarkable role model for the younger generation." (Adnan Talat Character Letter).

- "Mr. Ali's **unwavering commitment to supporting friends and community members** in times of need truly sets him apart." (Mr. Ali Mazharuddin Character Letter).

- "Mr. Ali has a strong work ethic and is always a good source to get his help in all aspects of life. He has always been driven by a genuine desire to make a positive impact on society, and **his actions reflect the highest standards of integrity and compassion**. His involvement in numerous charitable efforts, along with his leadership in organizing community-driven projects, showcases his deep commitment to social causes." (Ahmed Mohluddin Character Letter).

- "Your honor, **my husband is a devoted man, and a person of such integrity and kindness.** He has helped my siblings in their careers and families by housing them and providing them with jobs when they came to America. My children have looked up to him as a good role model and father. We also have three grandchildren who are obsessed with their grandpa, who gives them love and adoration. Given all these factors, I implore you to not give him a prison sentence. **Please, I need him in my life and so does his family.**" (Naseem Ali Character Letter).

A noncustodial sentence will serve the purpose of federal sentencing while also allowing Mr. Ali to continue caring for his wife, and to continue making the positive impacts that he is adored for around the world.

### ARGUMENT

Post-*Booker*, the Sentencing Guidelines are now purely advisory. *United States v. Booker*, 543 U.S. 220, 226 (2005). Even though the Guidelines are purely advisory, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the applicable Guidelines range, the

17

Court should then consider all the sentencing factors in 18 U.S.C. § 3553(a). *See id.* at 50. In formulating a sentence that is sufficient, but not greater than necessary to accomplish the purposes of sentencing, the district court "must make an individualized assessment based on the facts presented" and "may not presume that the Guidelines range is reasonable." *Id*.

Here, Mr. Ali and the Government have stipulated to the following Sentencing Guidelines calculation[3]:

| | |
|---|---|
| Base Offense Level (§ 2B4.1(a)) | 8 |
| Loss Amount (§§ 2B4.1(b) & 2B1.1(b)(1)(I)) | 16 |
| Organizer or Leader (§ 3B1.1(c)) | 2 |
| Acceptance (§ 3E1.1) | -3 |
| Criminal History Category | I (0 points) |
| Adjusted Offense Level | 23 |

With no dispute as to the proper Sentencing Guidelines calculation, this Honorable Court need only focus on the factors described in 18 U.S. Code § 3553(a).

### A. The § 3553(a) Factors

The advisory Guidelines calculation discussed above is only one of the many factors the Court must consider in crafting a sentence. After all, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). Instead, a sentencing court must consider the advisory Guidelines calculation in conjunction with the factors to be considered in imposing a sentence that Congress established. 18 U.S.C. § 3553(a). With this in mind, we turn to the § 3553(a) sentencing factors. In doing so, we are mindful that a sentencing court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007). A sentence that varies from the advisory Guidelines range may be based on "an individualized determination

---

[3] Plea Agreement filed August 12, 2024 (ECF #19) at ¶¶ 14-19.

that [the Guidelines] yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009).

A sentence "must always . . . be 'sufficient, but not greater than necessary,'" *United States v. Jordan*, 991 F.3d 818, 822 (7th Cir. 2021) (citation omitted), to satisfy four goals: "just punishment, deterrence, the protection of the public, and rehabilitation." *Dean v. United States*, 581 U.S. 62, 67 (2017). As the Court is aware, a court imposing a sentence must consider the kinds of sentences available, the nature and circumstances of the offense, the relevant Sentencing Guidelines, the history and characteristics of the defendant, the need to avoid unwarranted sentencing disparities, the goals of sentencing, and, where applicable, the need for restitution to victims. 18 U.S.C. § 3553(a). We respectfully submit that a balancing of these factors should result in a noncustodial sentence significantly below the advisory Guidelines range, because any term of imprisonment whatsoever would be far "greater than necessary" to punish and rehabilitate Mr. Ali, protect the public, and deter future violations of the AKS.

When considering the factors set forth in 18 U.S.C. § 3553(a), a district judge is given broad discretion, "for good reason," to consider the facts, circumstances, and impacts of the sentence, including "the demeanor of the defendant, the sincerity of his remorse, incentives that he had to change his path, the demeanor of those speaking in mitigation and the support they might add to rehabilitation efforts," and other such aspects that may not be evident from the "cold, entombed, inflectionless record." *United States v. Daoud*, 989 F.3d 610, 611 (7th Cir. 2021). Thus, while district courts have taken a range of approaches to weighing the 18 U.S.C. § 3553(a) factors, there is wide agreement that the post-*Booker* sentencing regime gives district judges "considerable discretion to individualize the sentence to the offense and offender as long as the

judge's reasoning is consistent with § 3553(a)." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (quoting *United States v. Wachowiak*, 496 F.3d 744, 748 (7th Cir. 2007)).

We respectfully urge the Court to consider the following when deciding the sentence to impose on Mr. Ali.

### i. The Nature of the Offense

The offense consists of Mr. Ali, through Noah, improperly making payments for supposed marketing services that benefitted Noah. Noah ultimately paid over $150,000.00 to Mrs. Owens, and more than $260,000.00 to Ms. Johnson. A noncustodial sentence would be sufficient, but not greater than necessary, to serve the purposes of federal sentencing while also allowing Mr. Ali to care for his wife and himself, and continue to do great things for those in need.

### ii. Mr. Ali's History and Characteristics

Under § 3553(a), the Court must also consider Mr. Ali's specific history and personal characteristics, which are even more exceptional than the nature and circumstances of his offense. Such factors need not be "extraordinary" to warrant a downward variance from the applicable Guidelines range. *United States v. Warner*, 792 F.2d 847, 857 (7th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 47 (2007)). We urge the Court to consider Mr. Ali's life and character in its entirety, as demonstrated in the attached letters provided by those who know him best.

Mr. Ali has led an exemplary life. This fact is important at sentencing, where the "punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). As one court has explained:

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which

is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006).

Mr. Ali is a committed family man. One constant theme among his letters of support is his commitment to his family and, importantly, his wife. At sentencing, courts are required to consider the impact a defendant's absence will have on his family, *see, e.g.*, *United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008) (vacating sentence and remanding for resentencing where court failed to consider the defendant's family circumstances), and here, that impact would be catastrophic. As discussed above, Mr. Ali's wife, Naseem, endures severe chronic pain stemming from an automobile accident more than 20 years ago where she and her children were hit by a drunk driver. The collision caused Mrs. Ali to suffer multiple spine and spinal cord injuries. Mr. Ali is her primary caretaker; she relies on her husband to aid her mobility when she has bad days with her chronic pain, and he handles her day-to-day affairs as well, since she is not fluent in English. "It is certain that [Naseem] will suffer a great deal, both in health and otherwise, if [Mr. Ali] were not present to care for her." (Dr. Sara Hasan, DO Character Letter).

In addition, Mr. Ali has an exceptional record of public service, charity, community service, and other good works – all significant factors and should be taken into account as mitigating factors in this case.

Consideration of such good works is completely appropriate in granting both downward variances and departures. *See, e.g.*, *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (affirming sentence where district court had granted a downward variance for defendant's charitable work); *United States v. Crouse*, 145 F.3d 786, 791 (6th Cir. 1998) (exceptional community service record permissible ground for downward departure); *United States v. Kuhn*,

351 F. Supp. 2d 696, 705 (E.D. Mich. 2005) (defendant was entitled to downward departure based on community service record that extended beyond financial contributions). Indeed, courts have departed from the Guidelines for exceptional acts of charity similar to Mr. Ali's. *See United States v. Woods*, 159 F.3d 1132, 1136-37 (8th Cir. 1998) (affirming downward departure because of defendant's exceptional acts of charity, including bringing "two troubled young women" into her home).

### iii. The Need for Retribution, Deterrence, Incapacitation, and Rehabilitation

Section 3553(a)(2) instructs district courts to consider the need for the sentence imposed to achieve several overarching *sentencing* purposes, which the Supreme Court has summarized as "retribution, deterrence, incapacitation, and rehabilitation." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018) (internal quotation marks and citation omitted). "District courts must determine in each case what constitutes a sentence that is 'sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a) to achieve [these] purposes." *Id*. We submit that sentencing Mr. Ali to a prison sentence would be greater punishment than necessary to accomplish the purposes of sentencing set forth in § 3553(a), which purposes would be fully served by a noncustodial sentence with any other requirements the Court deems appropriate.

The Supreme Court recognized in *Gall* that in some cases, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quoting district court opinion). The need for severe punishment further diminishes here when considering Mr. Ali's exemplary life, especially his dedication to caring for his family, his substantial record of service to those in need, and the fact that he is very different from the typical white-collar defendant—factors which have led courts to

issue below Guidelines sentences. *See*, *e.g.*, *United States v. Cole*, 765 F.3d 884, 885 (8th Cir. 2014 (affirming noncustodial sentence in fraud case in part because defendant had no prior contact with law enforcement and was "'markedly different 'than 'most of the fraudsters who appear before th[e] Court.'"); *United States v. Warner*, 792 F.3d 847, 850, 857 (7th Cir. 2015) (record of good deeds was the "primary mitigating factor" leading to noncustodial sentence).

Any sentence the Court imposes must also "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." § 3553(a)(2)(B)-(C). As set forth below, a noncustodial sentence of probation will serve as an adequate deterrent to Mr. Ali. He is simply not, nor has he ever been, a threat to the public. No public interest is served by putting him behind bars, separating him from his wife, and making it impossible for Mr. Ali to continue his work with KNA. To the contrary, the public will suffer by being deprived of an individual whose charitable giving, good works, and work ethic have improved so many lives.

There is no evidence suggesting that Mr. Ali risks recidivism. Mr. Ali's participation in the scheme, as detailed above, was a lapse of judgment in an otherwise admirable life.

As for general deterrence, the community and Mr. Ali's family have seen the shame that Mr. Ali carries, as well as the financial penalties he has incurred and potentially faces at sentencing. *See Warner*, 792 F.3d at 861 (general deterrence exists where it is clear to others that the crime is not worth the money sanctions). There is no reason to think that a term in prison will do any more to set similar potential offenders straight. *United States v. Roth*, No. 05 CR 792-5, 2008 WL 686783, at *1, 2 (N.D. Ill. Mar. 11, 2008) (despite the Guidelines 'range of 63-78 months, ordering probation in part because defendant "presents no threat of recidivism," "letters written on her behalf demonstrate conclusively that this was a one-time failing," and she had already suffered "embarrassment and humiliation" due to the press coverage of her crime).

34392742.4

### iv.  Mr. Ali's Low Risk of Recidivism

Data from the United States Sentencing Commission shows recidivism is unlikely given Mr. Ali's Total Offense Level of 23.  *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004), at 30, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last visited on November 6, 2024 and attached hereto as **Exhibit B**.)  Specifically, this data shows that of Criminal History Category I offenders such as Mr. Ali, only 13.3% recidivate.  *Id*.  Additionally, the Sentencing Commission found that sentences consisting of probation plus alternatives resulted in a 16.7% recidivism rate, while sentences consisting of only incarceration resulted in a 25.6% recidivism rate.  *Id*. at 31.  These facts underscore the reality that both general and specific deterrence is best promoted when a court exercises its discretion to fashion a sentence using forms of punishment beyond simply imprisonment.  There is no danger that Mr. Ali will commit another crime in the future; his conduct here is an aberration.

Mr. Ali's sentence should therefore reflect his low risk of recidivism.  *See, e.g. United States v. Warner*, 792 F.3d 847, 850, 857 (7th Cir. 2015) (Affirming sentence of two years ' probation with community service, plus a $100,000 fine and costs despite defendant facing 46 to 57 months 'imprisonment under the Guidelines, where defendant was found to have low risk of recidivism).  *See also United States v. Marshall*, 870 F. Supp. 2d 489, 495 (N.D. Ohio 2012) ("An individual with a low risk of recidivism does not need a lengthy incarceration for the protection of the public."); *United States v. Stern*, 590 F. Supp. 945, 958 (N.D. Ohio 2008) (imposing below-Guidelines sentence based in part on low level risk of recidivism); *United States v. Smith*, 275 Fed. App'x 184, 188 (4th Cir. 2008) (per curiam) (finding a below-Guidelines sentence appropriate in

34392742.4

part because of the defendant's "low risk of recidivism"); *United States v. Myers*, 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (sentence of three months 'probation, rather than 20 to 30 months ' imprisonment suggested by Guidelines, was appropriate given nature of defendant's actions because "[h]e is of no harm to his community and poses no additional threat.")

### v. The Need to Avoid Unwarranted Sentencing Disparities

By sentencing Mr. Ali to probation, this Court will in no way create an unwarranted disparity among similar offenders. Where, as here, a custodial sentence is not required to meet the objectives of sentencing, courts issue noncustodial sentences—even where the Guidelines call for significant prison terms. *See, e.g.*, *United States v. Warner, supra*; *United States v. Cole*, 765 F.3d 884 (8th Cir. 2014) (135-168 months); *United States v. Rowan*, 530 F.3d 379, 380–81 (5th Cir. 2008) (46–57 months); *United States v. Pyles*, No. 06-4522, 2008 WL 920451, at *1 (4th Cir. Apr. 4, 2008) (63–78 months); *United States v. Roque*, 536 F. Supp. 2d 987 (E.D. Wis. 2008) (87–108 months).

This is especially true where, as here, the offender has little or no criminal history and has a well-established record of good works and charity. In *Warner*, for instance, the Seventh Circuit affirmed a district court's decision to sentence an offender facing 46 to 57 months 'imprisonment (per the Guidelines), to two years' probation with community service, plus a $100,000 fine and costs. Warner, a billionaire, pleaded guilty to tax evasion exceeding $5.5 million dollars. *Warner*, 792 F.3d at 851. Nevertheless, the Seventh Circuit found the district court was within its discretion to order probation in lieu of imprisonment in part because Warner had a record of charitable contributions and was a first-time offender who had voluntarily pleaded guilty and posed a low risk of recidivism. *Id.* at 857-862.

By imposing a below-Guidelines sentence, this Court would be one in a line of sentencing judges to recognize that below-Guidelines sentences can better meet sentencing's objectives for first-time, nonviolent, high character offenders.

## CONCLUSION

All of the goals of sentencing—punishment, specific deterrence, general deterrence—will be achieved by a noncustodial sentence. Nothing will realistically be accomplished by imposing a sentence requiring incarceration.

To achieve justice, criminal justice must have a conscience. It must have a sense of what is right, and what is wrong—in light of the unique characteristics of each criminal defendant and the interests of society as a whole. We respectfully submit, for all the reasons detailed above, that imposing a sentence of incarceration would not achieve justice. All the relevant 18 U.S.C. § 3553(a) factors warrant a noncustodial sentence. A sentence that is sufficient but not greater than necessary to further the purposes of § 3553(a)—one that would achieve justice—is, we submit, a noncustodial sentence.

Respectfully submitted,

*/s/ Richard H. Blake*
RICHARD H. BLAKE (0083374)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email: rblake@mcdonaldhopkins.com

*Counsel for Defendant Mohammad K. Ali*

34392742.4

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*/s/ Richard H. Blake*
RICHARD H. BLAKE (0083374)

*Counsel for Defendant Mohammad K. Ali*

34392742.4